IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

SOUTHEASTERN CARPENTERS        \*
MILLWRIGHTS PENSION TRUST     \*
FUND; and J. KIRK MALONE and   \*
TOM JENKINS, as Trustees of     \*
the Fund,                          \*
                                  \*
    Plaintiffs,               \*
                                  \*
     v.                     \*      CV 621-046
                                  \*
CYNTHIA GAIL CARTER; ROBIN     \*
HANDLY; and VICTORIA M.       \*
SHROYER,                        \*
                                  \*
    Defendants.             \*

**O R D E R**

Before the Court are five motions, all of which seek summary disposition of certain claims. (Docs. 43, 45, 54, 66, 70.) As explained below, Defendant Handly's motion for partial summary judgment (Doc. 43) and Defendant Thames'[1] first motion for summary judgment (Doc. 45) are **GRANTED**. The remaining motions (Docs. 54, 66, 70) are **DENIED.**

## I. BACKGROUND

The underlying facts of this Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") case are

---

[1] Defendant Victoria M. Shroyer, as listed on the docket, is now known as Victoria Thames. (Doc. 32.) As such, the Court will hereinafter to Ms. Thames as "Defendant Thames."

largely undisputed.  (Id. at 2.)  Decedent Bruce C. Jeffers was a "Participant" in the Southeastern Carpenters and Millwrights Pension Trust Plan (the "Plan"), which is governed by ERISA.  (Doc. 76-1, at 1-2.)  On January 24, 2008, Decedent filled out a form called a "Beneficiary Designation Card" which designated Defendant Handly, his then-fiancée, the Plan's "primary beneficiary" who would receive the Plan's proceeds (the "Plan Benefits") upon his death.  (Doc. 43-2, at 371.)  On the form, he designated his marital status as "single."  (Id.)  On October 23, 2010, Decedent filled out a second Beneficiary Designation Card which designated Ms. Grace Jeffers, his then-wife, the primary beneficiary.  (Id. at 373.)  On the same card, he also designated Defendant Thames, his step-daughter, the Plan's "contingent beneficiary."  (Id.)  He also designated his marital status as "married" – undisputedly, to Ms. Jeffers.  (Id.)  Lastly, on February 13, 2013, Decedent filled out a third Beneficiary Designation Card which designated Defendant Carter, his sister, the Plan's primary beneficiary.  (Id. at 375.)  On this third Beneficiary Designation Card, he again designated his marital status as "married."  (Id.)  Each Beneficiary Designation Card requires the Participant's signature and date, directly above text that reads: "NOTE: If you are married and designate someone other than your wife as your primary beneficiary, your spouse must consent by signing below, and her signature must be witnessed by a Notary Public.  Otherwise this

section does not need to be completed." (Id. at 371, 373, 375.)
Below that text, there is a signature line for the spouse's
signature and empty spaces for the notary public to complete.
(Id.) On the second and third Beneficiary Designation Cards, this
section was left blank even though Decedent checked the box for
"married" at the top of the card. (Id. at 373, 375.)

A Decree of Divorce was entered for Decedent and Ms. Jeffers
on January 31, 2020. (Doc. 54-1, at 1-3.) Then, on April 23,
2021, Decedent passed away. (Doc. 76-1, at 3.) Defendant Carter
submitted an application for benefits seeking distribution of
Decedent's Plan Benefits, which Plaintiff denied because Defendant
Carter was "not the designated beneficiary on file." (Doc. 43-2,
at 352-56). Defendant Carter appealed that decision on June 13,
2021. (Id. at 358-60.) On June 16, 2021, Plaintiff's Board of
Trustees heard the appeal and, "because it was uncertain as to the
validity of the various Beneficiary Designation Cards, affirmed
the denial of [Defendant] Carter's application for the [Plan]
Benefits" and filed the present suit. (Doc. 29, at 6.)

Plaintiff aptly summarizes the competing claims in its
Amended Complaint. (Id. at 6-7.) Essentially, there are three
potential claimants to the Plan Benefits. First is Defendant
Carter, who was named on the 2013 Beneficiary Designation Card.
(Id. at 6.) "Arguably, the 2013 Beneficiary Designation Card is
invalid because [Ms.] Jeffers did not sign it." (Id.) Second is

3

Defendant Thames, who was named the contingent beneficiary on the 2010 Beneficiary Designation Card. (Id.) Under the Plan's terms, "if a spouse is designated as a Beneficiary, such designation shall be revoked automatically by a subsequent divorce."[2] (Doc. 43-2, at 146.) "It is unclear, however, whether the divorce also revoked [Defendant Thames'] designation as a contingent beneficiary." (Doc. 29, at 6-7.) If so, "then she is not entitled to receive the [Plan] benefits." (Id. at 7.) If not, "she may be entitled to receive the [Plan] Benefits." (Id.) Third, and finally, is Defendant Handly. (Id.) "If the 2013 and 2010 Beneficiary Designation Cards are now invalid, then [Defendant] Handly may be entitled to receive the [Plan] Benefits." (Id.) No party disputes the 2008 Beneficiary Designation Card was properly executed. (See Doc. 43-2, at 371.)

Each of the three potential beneficiaries now moves for summary judgment – sometimes, twice. First, Defendants Handly and Thames agree Defendant Carter is not the proper beneficiary because

---

[2] The Parties filed several different versions of the Plan documents, although the provisions at issue here are identical in each. (See Doc. 61, at 3-4 n.4 ("Defendant Thames does not concede that the 2014 version [of the Plan] is applicable for all purposes and shows that the version in effect at the time a particular beneficiary designation form was filed with the Plan Administrator may be relevant. The numbering sequence of earlier versions differs somewhat from the 2014 iteration, but the basic language of the provisions cited is essentially the same and identical in some instances.").) The Court will refer to the most recent Plan version (from 2014), including the 2016 "Summary Plan Description" where it references the Plan documents. While the other versions may govern, no party avers any material difference between the versions. The other versions are available on the docket. (Doc. 43-2.) The "2001 Plan" is available at Doc. 43-2, at 14. The "2009 Plan" is available at Doc. 43-2, at 95. The "2007 Summary Plan Description" accompanied the 2001 Plan and is available at Doc. 43-2, at 203.

the 2013 Beneficiary Designation Card, which listed her as primary beneficiary and Decedent as "married," did not include his then-wife's signature.   As such, both Defendants move for summary judgment against Defendant Carter. (Docs. 43, 45.) Each Defendant - Handly, Thames, and Carter - also moves separately for summary judgment in her own favor against the other two Defendants.  (Docs. 54, 66, 70.)   The Court addresses each of the motions below, ultimately finding that none of the Defendants are proper beneficiaries under their claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor."  United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation omitted) (internal quotation marks omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court the basis for its motion by reference to materials in the record. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The movant may demonstrate an absence of evidence to support the nonmovant's case, or provide affirmative evidence demonstrating the nonmovant's inability to prove its case at trial.  Id.

If the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id.  The non-movant must tailor its response to the method by which the movant carries its initial burden.  For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993).  On the other hand, if the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17.  The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint.  See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th

Cir. 1981).  Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of Court provided all parties notice of the motions for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default. (Docs. 44, 48, 56, 67, 71.)  For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985), have been satisfied.  The time for filing materials in opposition has expired, the issues have been thoroughly briefed, and the motion is now ripe for consideration.

## III. DISCUSSION

### A. Defendant Carter is Not Entitled to the Plan Benefits

Defendants Handly and Thames agree Defendant Carter is not the proper beneficiary because the 2013 Beneficiary Designation Card, which listed her as primary beneficiary and Decedent as "married," did not include his then-wife's signature; as such, both of those Defendants move for summary judgment against Defendant Carter.  (Docs. 43, 45.)  The Court will address these motions first, and – since the arguments tie directly into Defendant Carter's own motion for summary judgment (Doc. 54) – the Court will address that motion in this same section.  Ultimately, the Court agrees that under the Plan language and ERISA, Defendant Carter is not entitled to the Plan Benefits.

Defendants Handly and Thames argue Defendant Carter's claim to the Plan Benefits is invalid because (1) Decedent was married at the time the 2013 Beneficiary Designation Card was executed; (2) Decedent's then-wife undisputedly did not sign the 2013 Beneficiary Designation Card; and (3) under the terms of the Plan, a married Participant's spouse must consent to the naming of anyone other than the spouse as the Plan's primary beneficiary. (Doc 43-1, at 2 ("The Summary Plan Description that governed the Plan when the Beneficiary Designation Card was signed expressly provided that, if a participant was married, they 'may not designate anyone other than [their] spouse as [their] beneficiary without [their] spouse's written consent and acknowledgment of the specific alternate beneficiary'); Doc. 46, at 4 ("Quite simply, because the Participant's then-spouse indisputably did not sign the Beneficiary Designation Card on February 13, 2013, or otherwise consent in writing to the Participant naming someone other than her as the primary beneficiary of any of his accrued Plan benefits, Defendant Carter has no cognizable claim to the Interpled Funds").) The Plan's Summary Plan Description provides,

> You may designate a beneficiary to receive your account balance in the event of your death. You may designate any one or more persons, a trust, or your estate as your beneficiary. However, if you are married, you may not designate anyone other than your spouse as your beneficiary without your spouse's written consent and acknowledgment of the specific alternate beneficiary.

(Doc. 43-2, at 278.)   Regarding spousal consent, the Plan specifies,

> Spousal consent obtained for purposes of this Plan (a) shall be in writing; (b) shall designate a Beneficiary or Beneficiaries or a form of benefit that may not be changed without further spousal consent or shall expressly permit other designations by the Participant without further spousal consent; (c) shall acknowledge the effect of such consent; and (d) shall be witnessed by a notary public or a representative of the Plan Administrator.

(Id. at 173.)

Numerous courts in this Circuit have held that ERISA, 29 U.S.C. § 1055 "provides that, in most cases, spousal consent is required before a non-spouse beneficiary may be designated to receive survivor benefits from an ERISA-governed plan." See, e.g., Bennett Motor Express Mgmt., Inc. v. Foster, No. 1:14-CV-775, 2014 WL 12637934, at *7 (N.D. Ga. Nov. 5, 2014). ERISA, 29 U.S.C. § 1055(c)(2)(A) requires that, to establish an effective waiver of benefits,

> [T]he spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public[.]

9

Further, because the Court's basis for jurisdiction over this action is diversity, "the claimants' rights to the funds at issue are governed by state law, while the procedural rules are governed by federal law." <u>Jackson v. Nat'l Life Ins. Co. v. Coker</u>, No. 1:15-CV-837, 2016 WL 4536463, at *4 (N.D. Ga. June 9, 2016) (citation omitted).   In Georgia, "[i]f the terms of the contract are plain and unambiguous, the contract must be enforced as written." <u>Id.</u> at *7 (quoting <u>Ryan v. State Farm Mut. Auto. Ins. Co.</u>, 413 S.E.2d 705, 707 (Ga. 1992)).

Here, there is no dispute that both (1) Decedent was married at the time he filled out the Third Beneficiary Designation Card on February 13, 2013, and (2) Decedent's then-wife failed to sign the form as required by the Plan.   (Doc. 43-2, at 375.)   Thus, under the terms of the Plan and ERISA, Defendant Carter's claim to the Plan Benefits fails as a matter of law.

Defendant Carter disagrees on several grounds.   First, she points out that Section 1.07 of the Plan does not include the same spousal consent requirement.   (Doc. 52, at 6-7.)   That section provides,

> The term "<u>Beneficiary</u>" shall mean any person or persons, a trust, or a Participant's estate or personal representative duly designated by the Participant in such form as the Trustees may prescribe to receive any death benefit that may be payable hereunder if such person, persons, or entity survive the Participant.

> This designation may be revoked at any time in similar manner and form. Furthermore, if a spouse is designated as a Beneficiary, such designation shall be revoked automatically by a subsequent divorce. In the event of the death of the designated Beneficiary prior to the death of the Participant, the Contingent Beneficiary shall be entitled to receive any death benefit. In the event that neither the Beneficiary nor Contingent Beneficiary survives the Participant or that no Beneficiary or Contingent Beneficiary has been effectively named, Section 5.14 hereof shall apply.

(Doc. 43-2, at 297.)  She also points out that Section 5.14 of the

Plan provides, in part,

> The Participant may change his or her Beneficiary designation from time to time by filing a new form with the Plan Administrator. No Beneficiary designation shall be effective unless and until the Participant has properly filed the completed form with the Plan Administrator.

(Id. at 334.)  Synthesizing these two sections, Defendant Carter

argues that "[a]ll a Participant must do to change a beneficiary

designation according to Section 5.14 is file a new form with the

Plan Administrator."  (Doc. 52, at 7.)  She points out that

according to Section 5.14, "when 'a spouse is designated as a

Beneficiary, such designation shall be revoked automatically by a

subsequent divorce.'"  (Id.)  She argues there "is no process by

which a beneficiary designation form is 'returned' to the Plan

Participant that sent it to be filed.  Beneficiary designation

forms are not 'defective.' . . . The only way to correct, modify,

or change a designation is to file another form with the Plan Administrator." (Id.)

These arguments ignore the Summary Plan Description's plain requirement that a Participant – to designate a beneficiary other than his spouse – must obtain that spouse's written consent. (Doc. 43-2, at 278.)   As Defendant Carter points out, Section 5.14 states, "[n]o [b]eneficiary designation shall be effective unless and until the Participant has properly filed the *completed* form with the Plan Administrator."   (Id. at 334 (emphasis added).) Without spousal consent as required by the Summary Plan Description, the attempted designation form is not complete according to the Plan terms, so Section 5.14 is not satisfied. Defendant Carter accordingly has no claim to the Plan Benefits.

Defendant Carter also argues Defendant Handly and Defendant Thames' "claim[s] fail[] because at the time of the Plan Participant's death, [they were] not designated as a beneficiary." (Doc. 52, at 8-14.)   She argues Defendant Handly's claim was revoked once Decedent filed the 2010 Beneficiary Designation Card, and that "[t]here is no language in the Plan which provides for a revoked beneficiary designation to be revived at any time, by any means, or for any reason whatsoever." (Id. at 9.)   She argues Defendant Thames' claim fails because Ms. Jeffers' "status as primary beneficiary had been revoked by virtue of a divorce decree entered January 31, 2020" and the "Plan does not distinguish

between the revocation of the primary beneficiary and the contingent beneficiary." (Id. at 10, 11.)

Notwithstanding these arguments, Defendant Carter's claim is still doomed. Defendant Carter does not contest that Decedent did not have spousal consent at the time he attempted to designate her as the Plan's primary beneficiary, making that attempt unsuccessful. Defendant Carter herself acknowledges "the spouse's signature may be necessary in order to validly designate a primary beneficiary other than the spouse of the Participant." (Doc. 68, at 3.) Even if Defendant Carter is correct that Defendants Handly and Thames are not entitled to the Benefit Proceeds (which the Court will address below), Defendant Carter was not designated a valid beneficiary under the Plan terms and has no claim to the Plan Benefits under this theory.

Lastly, Defendant Carter argues "[t]he language of the Plan does not support any argument that the filing of the [2013 Beneficiary Designation Card] was a nullity."[3] (Doc. 52, at 14.)

---

[3] Defendant Carter argues that "[w]hile the spouse's signature may be necessary in order to validly designate a primary beneficiary other than the spouse of the Participant, there is nothing in the Plan documents, the Summary Plan Descriptions, or the beneficiary designation forms provided to the Participant, which indicates the spouse's signature is necessary in order for the form to be considered 'completed' by the Plan Administrator and filed accordingly." (Doc. 68, at 3.) This argument, of course, does not follow. Both the Summary Plan Description and the Beneficiary Designation Card make clear that the Participant's spouse's written consent is required to validly designate a primary beneficiary other than that spouse. (Doc. 43-2, at 278, 373.) Undeterred, Defendant Carter argues the 2013 Beneficiary Designation Card should control because "all the Participant has to do to change beneficiaries is file a form with the Plan," and that any other interpretation "would deny a Participant's clear expression of intent to change a prior beneficiary designation." (Doc. 68, at 4.)

Defendant Carter is plainly wrong.  As described above, the Summary Plan Description requires spousal consent for a Participant to designate a non-spouse as a primary beneficiary.  (Doc. 43-2, at 278.)  As a result, the 2013 Beneficiary Designation Card is a nullity and Defendants Handly and Thames' motions for summary judgment (Docs. 43, 45) are **GRANTED.**  Defendant Carter's motion for summary judgment (Doc. 54) is **DENIED.**

## B. Neither Remaining Party Asserts a Valid Claim

Next, the Court will address the remaining two motions: Defendants Handly and Thames' cross-motions for summary judgment. (Docs. 66, 70.)  Each Defendant claims she is entitled to the Plan Benefits.  Ultimately, the Court finds neither Defendant is the rightful beneficiary of the Plan, and therefore neither Defendant is entitled to summary judgment in her favor.

The Defendants' arguments are as follows.  Defendant Handly moves for summary judgment on the grounds that (1) the October 2010 Beneficiary Designation Card did not designate any new beneficiaries due to a defect, nor did it revoke her right to the Plan Benefits, and (2) even if the 2010 beneficiary designation was valid and displaced her, Decedent's 2020 divorce from Ms. Jeffers revoked Defendant Thames' claim, reinstating Defendant Handly's 2008 designation as primary beneficiary.  (Doc. 66-1, at 7-11.)  In response, Defendant Thames argues (1) the 2010 Beneficiary Designation Card was complete and valid, and that as

the contingent beneficiary, she is entitled to the Plan Benefits, and (2) although the 2020 divorce unquestionably revoked Ms. Jeffers' status as *primary* beneficiary, it did not revoke Defendant Thames' own status as *contingent* beneficiary, even though the designations were made on the same Beneficiary Designation Form. (Doc. 72, at 5-8.)  Defendant Thames also argues "any designation of [Defendant] Handly [in 2008] was revoked by the proper designation of Ms. Jeffers as primary beneficiary and Defendant Thames as contingent beneficiary" in 2010.  (Id. at 8.)

To resolve these competing claims, the Court again looks to the Plan documents.  With the relevant parts preceded by section numbers and quoted in their entirety for reference, and with key passages emphasized, the Plan provides,

> 1.07 The term "Beneficiary" shall mean any person or persons, a trust, or a Participant's estate or personal representative *duly designated by the Participant in such form as the Trustees may prescribe* to receive any death benefit that may be payable hereunder if such person, persons, or entity survive the Participant. *This designation may be revoked at any time in similar manner and form.* Furthermore, *if a spouse is designated as a Beneficiary, such designation shall be revoked automatically by a subsequent divorce. In the event of the death of the designated Beneficiary prior to the death of the Participant, the Contingent Beneficiary shall be entitled to receive any death benefit. In the event that neither the Beneficiary nor Contingent Beneficiary survives the Participant or that no Beneficiary or Contingent Beneficiary has been effectively named, Section 5.14 hereof shall apply.*

15

1.11 The term "Contingent Beneficiary" shall mean any person or persons, a trust, or a Participant's estate or representative duly designated by the Participant *in such form as the Trustees may prescribe to receive any death benefit payable under the Plan in the event the Participant's designated Beneficiary does not survive the Participant.*

5.14 Beneficiaries. The Plan Administrator shall provide to each new Participant a form on which he or she may designate (a) one or more Beneficiaries who shall receive all or a portion of the Participant's Account upon the Participant's death, *including any Beneficiary who shall receive a benefit only in the event of the death of another Beneficiary;* (b) the percentages to be paid to each such Beneficiary (if there is more than one); and (c) if desired, the form of payment to be made to each such Beneficiary in accordance with this Plan. Notwithstanding the foregoing, *a married Participant who dies before his or her Annuity Starting Date shall be deemed to have designated his or her surviving spouse as his or her sole Beneficiary with respect to at least 50% of his Account unless the Participant's spouse consents to the designation of a Beneficiary other than the spouse in the manner described in Section 5.15 hereof.*

The Participant may *change* his or her Beneficiary designation from time to time by filing a new form with the Plan Administrator. *No Beneficiary designation shall be effective unless and until the Participant has properly filed the completed form with the Plan Administrator.*

*If a deceased Participant is not survived by a designated Beneficiary or if no Beneficiary was effectively designated, upon the Participant's death, the Participant's Account (if any) shall be paid to his or her named Contingent Beneficiary, if such*

16

*designation of a Contingent Beneficiary has been similarly consented to by the Participant's spouse in the manner described in Section 5.15 hereof.* If a deceased Participant is not survived by either a named Beneficiary or Contingent Beneficiary (or if no Beneficiary or Contingent Beneficiary was effectively named), the benefits shall be paid in a lump-sum to the person or persons, as provided in Section 5.08(c), to the person or persons in the first of the following such class then surviving: the Participant's (a) widow or widower; (b) children; (c) parents; (d) brothers and sisters; or (e) executors and administrators. If the Beneficiary or Contingent Beneficiary is living at the death of the Participant, but such person dies prior to receiving the entire death benefit, the remaining portion of such death benefit shall be paid in a single sum to the estate of such deceased Beneficiary or Contingent Beneficiary.

5.15 Spousal Consent. Spousal consent obtained for purposes of this Plan (a) shall be in writing; (b) shall designate a Beneficiary or Beneficiaries or a form of benefit that may not be changed without further spousal consent or shall expressly permit other designations by the Participant without further spousal consent; (c) shall acknowledge the effect of such consent; and (d) shall be witnessed by a notary public or a representative of the Plan Administrator. The Plan Administrator may waive the spousal consent requirement if the Plan Administrator is satisfied that such consent cannot be obtained because a Participant's spouse cannot be located or because of such other circumstances as the Secretary of the Treasury by regulations may prescribe. The consent of a Participant's spouse shall be binding only upon the spouse who granted such consent.

(Doc. 43-2, at 297, 299, 334-35.)

17

As described above, the dispute between the remaining Defendants can be divided into three competing arguments. First, the Parties disagree about whether the 2010 Beneficiary Designation Card was valid, because Ms. Jeffers did not sign it and Defendant Thames is denoted as the contingent beneficiary. Second, whether the 2010 Beneficiary Designation Card 'revoked' Defendant Handly's status as primary beneficiary, and relatedly, whether such status can be 'reinstated.' Third, whether Decedent's and Ms. Jeffers' divorce revoked only Ms. Jeffers' claim (as primary beneficiary) to the Plan Benefits, or whether the divorce also revoked Defendant Thames' status as contingent beneficiary. The Court will address the arguments below.

1. *The 2010 Contingent Beneficiary Designation was Invalid*

First, Defendant Handly argues the 2010 Beneficiary Designation Card was invalid because "Ms. Jeffers – the Participant's spouse in October 2010 – did not consent to [Defendant] Thames being named the Participant's contingent beneficiary, *which the Plan document expressly required.*" (Doc. 66-1, at 9 (emphasis in original).) Defendant Handly points to a portion of Section 5.14 which states, "[i]f a deceased Participant is not survived by a designated Beneficiary or if no Beneficiary was effectively designated, upon the Participant's death, the Participant's Account (if any) shall be paid to his or her named Contingent Beneficiary, *if such designation of a Contingent*

18

Beneficiary *has been similarly consented to by the Participant's spouse in the manner described in Section 5.15 hereof*." (<u>Id.</u> at 4.) (citing Doc. 43-2, at 335.) Defendant Handly argues this means Ms. Jeffers was required to consent to Decedent's designation of Defendant Thames as contingent beneficiary in the manner laid out in Section 5.15 - specifically, consent in writing, naming the beneficiary, and affirmed by a Notary Public. (<u>Id.</u> at 9.) Because there is no evidence Ms. Jeffers ever fulfilled those requirements, Defendant Handly argues the 2010 Beneficiary Designation Card "did not designate any new beneficiaries of the Participant's interest in the Plan or revoke the rights that [Defendant] Handly indisputably had by virtue of the valid January 2008 [B]eneficiary [D]esignation [C]ard." (<u>Id.</u>)

Defendant Thames disagrees.  She points to Section 1.07 of the Plan, which defines a beneficiary as "any person or persons, a trust, or a Participant's estate or personal representative *duly designated by the Participant in such form as the Trustees may prescribe* to receive any death benefit that may be payable hereunder if such person, persons, or entity survive the Participant." (Doc. 70-2, at 7-8 (citing Doc. 43-2, at 297.).) She argues the Trustees utilized the Beneficiary Designation Card to prescribe the required terms, which states, "If you are married and designate someone other than your wife as your *primary beneficiary*, your spouse must consent by signing below, and her

signature must be witnessed by a Notary Public. *Otherwise this section does not need to be completed.*" (Id. (citing Doc. 43-2, at 373 (emphasis added)); Doc. 72, at 6.) She argues Decedent "did not designate someone other than his wife as his primary beneficiary while also naming [Defendant Thames] as [c]ontingent [b]eneficiary so the designation was complete and valid." (Id. at 8.)

Again, the Plan states, "if you are married, you may not designate anyone other than your spouse as your beneficiary without your spouse's written consent and acknowledgment of the specific alternate beneficiary." (Doc. 43-2, at 278.) While Ms. Jeffers was named the primary beneficiary on the 2010 Beneficiary Designation Card, that Card named two beneficiaries - a primary and a contingent. The second beneficiary was not the spouse. As such, the Plan language requires spousal consent for the second beneficiary designation to be effective, and it is undisputed that Ms. Jeffers did not provide written consent to Decedent naming Defendant Thames as contingent beneficiary. (Doc. 43-2, at 373.) Accordingly, Decedent Thames is not a proper beneficiary under the Plan terms and is not entitled to the Plan Benefits.

The Court acknowledges that the Beneficiary Designation Card appears to require a different result. (Id.) The Beneficiary Designation Card's language does not require the spouse to provide written consent when the Participant is merely naming a *contingent*

20

beneficiary.  (Id.)  However, the Plan's language *does* so provide, and there is no evidence the Beneficiary Designation Card was incorporated into the Policy terms.   The Court also acknowledges Defendant Thames' argument that because Ms. Jeffers was designated the primary beneficiary simultaneous to Defendant Thames' designation as contingent beneficiary, "[t]here [was] no need to establish an effective waiver of benefits [because] . . . the spouse, in fact, [was] not waiving benefits."   (Doc. 78, at 4.) Even still, the terms of the Plan require that for any beneficiary designation to be effective – even the designation of a contingent beneficiary – written, spousal consent in the manner provided by Section 5.15 is required.

Based on the text of the Plan, the Court determines the 2010 Beneficiary Designation Card did not effectively designate Defendant Thames a contingent beneficiary.[4]  Having ruled Defendant Thames is not entitled to the Plan Benefits, the Court now turns to whether Defendant Handly's designation remains valid in light of the 2010 Beneficiary Designation Card.  If so, Defendant Handly is entitled to summary judgment as the rightful beneficiary; if not, summary judgment must be denied.

---

[4] As discussed below, however, this does not mean Ms. Jeffers' designation as primary beneficiary was also ineffective.

2. *The 2010 Beneficiary Designation Form Revoked Defendant Handly's Designation as Beneficiary*

The Parties do not dispute Defendant Handly was properly named the Plan's primary beneficiary by the time the 2008 Beneficiary Designation Card was filed.   However, Defendant Thames alleges Defendant Handly's status as beneficiary was revoked by the 2010 Beneficiary Designation Card, and that Defendant Handly is no longer the Plan's proper beneficiary.   (Doc. 72, at 8.) Specifically, she argues Section 1.07 of the Plan indicates the filing of a new Beneficiary Designation Card revokes any former designation.   (Id. (citing Doc. 43-2, at 297 ("This designation may be revoked at any time in similar manner and form.")).) Defendant Handly disagrees, arguing (1) for the reasons stated above, the 2010 Beneficiary Designation Card was incomplete and could not have revoked [Defendant] Handly's prior designation as the [P]articipant's sole plan beneficiary and (2) "at least one primary beneficiary survived the Participant." (Doc. 76, at 4-5.)   Relatedly, in her response to Defendant Carter's motion for summary judgment, Defendant Handly also argues "the October 2010 [B]eneficiary [D]esignation [C]ard says nothing about revoking anyone's rights.   If anything, that [B]eneficiary [D]esignation [C]ard was an attempt . . . to 'change' a beneficiary designation, as provided by Section 5.14." (Doc. 62, at 7 n.3).  Again, Section 5.14 provides, "The Participant may change his or her Beneficiary

designation from time to time by filing a new form with the Plan Administrator." (Doc. 43-2, at 334.)

The Court finds that under the language of Section 1.07, a subsequent designation – made in the same manner and form as the earlier designation – revokes an earlier designation. (Doc. 43-2, at 297.) And here, the Plan language does not indicate the 2010 Beneficiary Designation Card failed to properly designate Ms. Jeffers as primary beneficiary – only that it failed to properly designate Defendant Thames as contingent beneficiary. (Id. at 278, 334, 373.) The Plan language indicates spousal consent is only required when the Participant designates someone *other* than the spouse to be a beneficiary. (Id. at 278.) While the 2020 divorce undisputedly revoked Ms. Jeffers' claim to the Plan Benefits, nothing in the Plan indicates it transformed the original designation into a nullity; rather, the Plan states the divorce caused the designation to be "revoked." (Id. at 297.) The Court finds the 2010 designation of Ms. Jeffers as primary beneficiary was valid and complete without her signature consenting to the designation, therefore revoking Defendant Handly's claim to the Plan Benefits. As a result, Defendant Handly is not a proper beneficiary under the terms of the Plan and her motion for summary judgment must also be **DENIED**.

## IV. Remaining Claims

Finding none of the Defendants' arguments in their motions for summary judgment prevail and that no beneficiary appears to have been effectively named, the Court notes the provision of Section 5.14 provides, "if no Beneficiary or Contingent Beneficiary was effectively named . . . the benefits shall be paid in a lump-sum to the person, or persons, as provided in Section 5.08(c), to the person or persons in the first of the following such class then surviving: the Participant's (a) widow or widower; (b) children; (c) parents; (d) brothers and sisters; or (e) executors and administrators." (Doc. 43-2, at 335.) As a result, the Clerk is **DIRECTED** to return the funds in the Court Registry to Plaintiff for distribution under the Plan terms in light of the Court's finding that none of Beneficiary Designation Cards - from 2008, 2010, and 2013 – confer any claim to the Plan Benefits.

## V. CONCLUSION

For the reasons explained above, Defendant Handly's motion for partial summary judgment (Doc. 43) and Defendant Thames' first motion for summary judgment (Doc. 45) are **GRANTED**. Defendant Carter's motion for summary judgment (Doc. 54) is **DENIED,** Defendant Handly's motion for summary judgment (Doc. 66) is **DENIED**, and Defendant Thames' second motion for summary judgment (Doc. 70) is **DENIED.** The Clerk is **DIRECTED** to return the funds in the Court

Registry, plus any accrued interest, to Plaintiff for distribution under the Plan terms.   The Clerk is **FURTHER DIRECTED** to **ENTER JUDGMENT** in favor of Plaintiff, **TERMINATE** all other pending motions, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this _7th_ day of September, 2022.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA